## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **LARRY WILBON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  3:18-CV-2697-G (BH)** |
| | § | |
| **NANCY A. BERRYHILL, ACTING,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge[1]** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence, and applicable law, the Commissioner's decision should be **AFFIRMED**.

## I.  BACKGROUND

Larry Wilbon (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), and for supplemental security income (SSI) under Title XVI of the Act. (docs. 1; 20.)

### A.    Procedural History

On October 23, 2014, Plaintiff filed his applications for DIB and SSI alleging disability beginning on November 1, 2013.  (doc. 15-1 at 203, 207.)  His claims were denied initially on December 2, 2014, and upon reconsideration on March 26, 2015.  (*Id*. at 101, 110,122,134.)  On April 8, 2015, he requested a hearing before an Administrative Law Judge (ALJ).  (*Id*. at 153-54.)

---

[1] By *Special Order No. 3-251*, this social security appeal was automatically referred for proposed findings of fact and recommendation for disposition.

He appeared and testified at a hearing on April 27, 2016. (*Id*. at 60-93.) On June 22, 2016, the ALJ issued a decision finding that he was not disabled, and denying his claims for benefits. (*Id*. at 43-55.)

Plaintiff appealed the ALJ's decision to the Appeals Council on June 29, 2016. (*Id*. at 34-35.) The Appeals Council denied his request for review on June 22, 2016, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 5.) Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* docs. 1; 20.)

**B.    Factual History**

      **1.    Age, Education, and Work Experience**

Plaintiff was born on July 6, 1970, and was 46 years old at the time of the hearing. (*See* doc. 15-1 at 66, 203.) He had at least a high school education and could communicate in English. (*Id*. at 68.) He had past relevant work experience as a food service host and a janitor. (*Id*. at 68-69.)

      **2.    Medical Evidence**

On December 31, 2013, Plaintiff saw Dr. Devesh Ramnath, M.D. (Dr. Ramnath), for severe back pain and radiculopathy. (*Id*. at 303.) An MRI of Plaintiff's L-spine without contrast showed slight decreased disc height at the L3-L4 to L5-S1 levels. (*Id.)*

In January 2014, Plaintiff was referred to Baylor Medical Center at Uptown for an MRI of his lumbar spine. (*Id*. at 306.) Imaging revealed L4-L5 disc protrusion with compression upon the traversing nerve root. (*Id*. at 307.) Plaintiff saw Dr. Ramnath, for L4-5 translaminar epidural injections, lumbar epidurograms, and radiographic interpretation of images. (*Id*. at 318, 326.) On January 29, 2014, Plaintiff saw Dr. Ramnath for low back pain, and an MRI confirmed he had herniated discs with stenosis at both L4-5 and L5-S1. (*Id.)* Plaintiff had a history of lower back pain

radiating to his legs, and he was unresponsive to conservative treatments including therapy, medications, and injections. (*Id.*) Plaintiff had a microlaminectomy and diskectomies for the L4-5 and L5-S1 discs in his back. (*Id.* at 298.)

On August 5, 2014, Plaintiff saw Dr. Michael Rimlawi (Dr. Rimlawi) for low back pain with bilateral lower extremity radiculopathy. (*Id.* at 337.) He complained that the pain was greater in his right side and went down both thighs, and it was constant and sometimes manifested as a throbbing sensation. (*Id.*) Bending forward, standing, and walking aggravated his pain, and lying down or taking pain medication helped alleviate some of it. (*Id.*) He described his pain as a nine on a scale of ten. (*Id.*) Dr. Rimlawi did not prescribe any medication because Plaintiff was seeing a physician for pain management. (*Id.* at 338.)

On August 5, 2014, Plaintiff met with Dr. Rimlawi for a physical exam. (*Id.* at 341.) He was able to heel and toe walk, and he had +4/5 motor strength, intact sensation bilaterally, negative straight leg raising, 2+ bilateral patella, and 1+ bilateral Achilles. (*Id.* at 338.) On August 12, 2014, he met with Dr. Rimlawi for a MRI of his lumbar spine without contract. (*Id.* at 345.) Imaging revealed a disc protrusion at the L5-S1 disc, a disc bulge at L4-5 with mild/moderate facet joint hypertorophy, and a disc bulge at L3-4 with moderate to severe narrowing of the thecal sac at the disc space level. (*Id.*) Plaintiff also had a minimal diffuse disc bulge and mild facet join hypertrophy at the L2-3 disc and a disc herniation. (*Id.*)

In September 9, 2014, Plaintiff saw Dr. Rimlawi because there had been no change in his symptoms since his last office visit, and he wanted to see if he was a surgical candidate for his back pain. (*Id.* at 335.) He had significant back pain that radiated down both of his thighs and worsened with sitting and standing as well as numbness in his right leg that radiated from his knee to his ankle.

(*Id.*) Plaintiff rated his pain at an eight on a scale of ten. (*Id.*) He complained that the first surgery did not relieve pain, but he wanted to proceed with surgical intervention because he was experiencing severe pain. (*Id.*)

On September 15, 2014, Plaintiff had an open laminectomy - discectomy at L2-L3, L3-4. (*Id.* at 349.) After surgery, he reported that his leg pain was gone and that he had an 80% improvement of his symptoms. (*Id.* at 332-33.) On September 29, 2014, he was able to heel and toe walk, retained +4/5 motor strength, and had bilaterally intact sensation. (*Id.* at 333.)

On October 16, 2014, Plaintiff met with Dr. Rimlawi for worsening back pain. (*Id.* at 332.) He complained of significant episodes of right back pain and right buttock pain that radiated down and to anterior aspects of his thigh. (*Id.* at 331.) Dr. Rimlawi reviewed Plaintiff's imaging and noted that he had multilevel degenerative disc disease, multilevel discogenic disc desiccation, laminecomy, his thecal sac was significantly open, and he had recurrent disc herniations that caused some stenosis. (*Id.*) Dr. Rimlawi indicated that Plaintiff would "probably need a three level lumbar fusion in the future," and that he should work on losing weight and attend physical therapy. (*Id.*) He prescribed Medrol Dosepak to help alleviate his symptoms. (*Id.*)

On November 3, 2014, Plaintiff stated that he had felt much better since being prescribed a Medrol Dosepak. (*Id.*) He could heel and toe walk and had +4/5 motor strength and bilaterally intact sensation. (*Id.*) Physical therapy three times a week was recommended. (*Id.*)

On March 11, 2015, Plaintiff went to Parkland Hospital for a refill of his medication for his chronic back pain. (*Id.* at 403.) During his physical examination, he had mild back pain and tenderness, full spinal range of motion, no tenderness to palpation, no redness, and no discoloration. (*Id.* at 405.) He also had 5/5 motor strength in the bilateral upper and bilateral lower extremities,

and intact distal pulses. (*Id.* at 456-57.) The examining physician ordered X-ray imaging that revealed bilaterial sacroiliac degenerative joint disease, bilateral hip degenerative changes with avascular necrosis of both hips, subchondral lucencies, and probable collapse, right greater than left, and multilevel facet arthropathy and degenerative disc disease with trace retrolisthesis of L4 on L5. (*Id.* at 406,408.) Plaintiff received refills on his medication and was told he needed to see a pain management or spine surgeon for a Norco prescription refill. (*Id.* at 408.)

### 3.    Hearing Testimony

On April 27, 2016, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (*Id.* at 62-89.) Plaintiff was represented by an attorney. (*Id.* at 76.)

#### a.    *Plaintiff's Testimony*

Plaintiff testified that he was 5'9" and 246 pounds, lived with his aunt, and had graduated from high school in 1988. (*Id.* at 67-68.) He had not worked for compensation since October 2013. (*Id.* at 70.)

At the hearing, Plaintiff was wearing a back brace and used a cane to walk. (*Id.* at 76, 83.) He testified that he generally wore the back brace everyday, required use of his cane every day, and used his non-dominant left hand to hold it. (*Id.* at 77, 83.) He was unable to work because he was in constant pain, had pain in both his legs that radiated down to his feet and numbness in his lower back, and was nauseated from his medication. (*Id.* at 71, 72.) He applied ice and/or heat to his back to relieve the pain, but rated it as an average of ten on a scale of ten. (*Id.*)

Plaintiff took several medications for pain, including Nanumetone, Abitripolene, and Noflanek, as well as medication for his cholesterol and depression, and he experienced nausea, vomiting, and dizziness from these medications. (*Id.* at 73, 75.) He was depressed because he

worked all his life and was "not used to being like this." (*Id.*) He also had trouble concentrating, was not as sharp as he used to be, and had trouble making decisions. (*Id.* at 77-78.)

Plaintiff testified that his primary care physician placed restrictions on his movements, recommending that he not kneel, bend, squat, lift, or twist. (*Id.* at 74.) In addition to pain medications, he received injections and had surgery to help alleviate the pain. (*Id.*) Although he was referred to physical therapy after his surgery, Plaintiff did not initially attend physical therapy because of his insurance plan. (*Id.* at 80.) Instead, he had a list of exercises for his back pain that he would perform everyday at home. (*Id.*) These exercises "helped a little bit, [but] not that much." (*Id.*)

Plaintiff spent his time watching television; he did not do any household chores, go grocery shopping, or do any outside activities. (*Id.* at 78-79.) He could sit for 20 to 30 minutes at most before needing to change positions and would sometimes lie on his bed with a heating pad for ten to fifteen minutes to alleviate his pain. (*Id.* at 84.) He had a walker that was not prescribed by any doctor that he would sometimes use at home, depending on how he was feeling. (*Id.* at 82.) Plaintiff lived with his aunt and needed assistance with being dressed because it hurt him to lift his arms. (*Id.* at 82-83.) His aunt cooked for him and took him to the grocery store, even though he didn't do any of the shopping. (*Id.* at 83.) He was able to shower without any assistance from his aunt. (*Id.*)

b.    *VE's Testimony*

The VE testified that Plaintiff had past work experience in food service, DOT 318.684 (SVP 2, medium, unskilled), and as a janitor, DOT 389.683-010 (SVP 2, medium, unskilled). (*Id*. at 88.)

The VE considered a hypothetical individual with the same age, education, and work history as Plaintiff who could perform light exertional level work with the following limitations: he could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; occasionally balance, stoop, kneel,

crouch and crawl. (*Id.* at 88.) This individual would not be able to perform Plaintiff's past work, but he could work as a price tagger, DOT 209.587-034 (SVP 2, light), with 5,700 jobs in Texas and 190,100 jobs nationally; ticket seller, DOT 211.467-030 (SVP 2, light), with 5,000 jobs in Texas and 185,000 jobs nationally; and an office cleaner, DOT 323.687-014 (SVP 2, light), with 11,000 jobs in Texas and 380,000 jobs nationally. (*Id.* at 88-89.)

The VE next considered a hypothetical individual who could perform only sedentary work with the following limitations: no climbing of ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; and avoiding any concentrated exposure to pulmonary irritants and extreme weather conditions. (*Id.* at 89.) This individual could not perform any of the jobs described in the first hypothetical, but could work as a call out operator, DOT 237.367-014 (SVP 2, sedentary), with 6,200 jobs in Texas and 160,000 jobs nationally; order clerk, DOT 209.567-014 (SVP 2, sedentary), with 5,500 jobs in Texas and 185,000 jobs nationally; and a final assembler, DOT 713.687-018 (SVP 2, sedentary), with 4,500 jobs in Texas and 175,000 jobs nationally. (*Id.* at 89-90.)

The VE then considered a hypothetical individual that was the same as the second individual, but could only sit for approximately 30 minutes with an option to stand up for five minutes but remain on task; could sit or stand approximately two hours in an eight-hour day with normal breaks; would require the use of a cane for ambulation with the non-dominant left hand; no climbing ladders, ropes, or scaffolds and no stopping; occasionally climbing ramps and stairs; and occasionally balancing, kneeling, crouching, and crawling. (*Id.* at 91.) The individual should avoid concentrated exposure to pulmonary irritants and extreme weather conditions, and could understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate

for extended periods, interact frequently with co-workers and supervisors, and respond to changes in routine work setting. (*Id.*) The VE testified that the individual would be able to perform work as a call out operator, DOT 237.367-014 (SVP 2, sedentary), with 6,200 jobs in Texas and 160,000 jobs nationally; order clerk, DOT 209.567-014 (SVP 2, sedentary), with 5,500 jobs in Texas and 185,000 jobs nationally; and a final assembler, DOT 713.687-018 (SVP 2, sedentary), with 4,500 jobs in Texas and 175,000 jobs nationally. (*Id.* at 89-91.) The VE stated that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (*Id.* at 89.)

In response to questioning by Plaintiff's attorney, the VE reconsidered the third hypothetical individual with the following changes: the individual had to leave his work station for the five minute breaks rather than standing on task. (*Id.* at 92.) The VE testified that this individual would not be able to perform the work because even though it was a short time, "over an eight-hour work [day], that would cause [him] to be off task too often." (*Id.*)

## C.    ALJ's Findings

The ALJ issued a decision denying benefits on June 22, 2016. (*Id.* at 43-55.) At step one, he determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2013, the alleged onset date. (*Id.* at 45.) At step two, he found that Plaintiff had the following severe impairments: degenerative disc disease, thoracic/lumbosacral neuritis/radiculitis, lumbar pinal stenosis, lower extremity radiculopathy and weakness, post-laminectomy syndrome, bilateral sacroiliac degenerative join disease, obesity, asthma, hyperlipidemia, and depression due to back pain. (*Id.*) Despite those impairments, at step three, the ALJ found that Plaintiff had no impairments or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations. (*Id.* at 46.)

The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with limitations: lift, carry, push and pull up to ten pounds occasionally; sit for approximately 30 minutes with option to stand up for five minute while remaining on task, and stand and walk for approximately two hours during the course of an eight-hour workday with normal breaks. (*Id.* at 48.) Plaintiff required use of a cane for ambulation with the non-dominant left hand, could never climb ladder, ropes, and scaffolds or stoop, but could occasionally climb ramps and stairs, and balance, kneel, crouch and crawl. (*Id.*)  Plaintiff should avoid any concentrated exposure to pulmonary irritants and extreme weather conditions  (*Id.*)  At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work.  (*Id.* at 53.)  At step five, the ALJ found that transferability of job skills was not an issue because his past relevant work was unskilled, and considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform.  (*Id.* at 54.)  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from November 1, 2013, through June 22, 2016. (*Id.* at 54-55.)

## II. LEGAL STANDARDS

Judicial review of the commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision. *Id.*

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 189, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.   An individual who does not have a "severe impairment" will not be found to

10

be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" will not be found to be disabled.

4.    If an individual is capable of performing the work he had done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)) (currently 20 C.F.R. § 404.1520(a)(4)(I)-(v)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. VE TESTIMONY

Plaintiff presents one issue for review:

A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply. The Administrative Law Judge found [Plaintiff] could never stoop. Does substantial

11

evidence support the finding he was not disabled?

(doc. 20 at 1.)  He argues that the ALJ erred in relying on the VE's testimony at step five to find that he was not disabled because SSR 96-9p provides that a complete inability to stoop would significantly erode the sedentary job base, and a finding of disabled was required.  (*Id.* at 6.)

To be considered disabled, a claimant must have a severe impairment that makes him unable to perform his previous work or any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1505(a). According to the Code of Federal Regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements [that a claimant is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). It is the Commissioner's burden at step five to show that a claimant is capable of performing other gainful employment in the national economy. 20 C.F.R. § 404.1520(a)(4)(i); *Greenspan*, 38 F.3d at 236. Once the Commissioner finds that jobs in the national economy are available to a claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.1990) (citing *Fraga*, 810 F.2d at 1302).

To establish that work exists for a claimant at step five of the sequential disability determination process, the ALJ relies on the testimony of a VE in response to a hypothetical question or other similar evidence, or on the Medical–Vocational Guidelines promulgated to guide this determination, often referred to as "the Grids." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir.1994); 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008). An ALJ may rely exclusively on the Grids if the impairments are solely exertional, or if the nonexertional impairments do not sufficiently or significantly affect the RFC. *Newton*, 209 F.3d

at 458 (citing *Fraga*, 810 F.2d at 1304 (stating that when "the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determine whether there is other work available that the claimant can perform.")). If the claimant suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments, then the ALJ must rely on the testimony of a VE or other similar evidence to establish that such jobs exist in the economy. *Id*. The Grids explicitly state that they "do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional impairments." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1).

Plaintiff does not contest that the jobs "identified by the [VE] do not require stooping," and he does not contest the ALJ's RFC determination. (doc. 20 at 6; doc. 24 at 2.) He argues that in SSR 96-9p, the Commissioner "gave a binding policy statement directing a finding of disabled where an ALJ finds a claimant (limited to the unskilled sedentary occupational base) has a complete inability to stoop." (doc. 20 at 6; doc. 24 at 2.) Because of this directive, he claims, the ALJ could not rely on the VE's testimony, and a finding of disability was mandated. (*See* doc. 20 at 8; doc. 24 at 8.)

SSR 96-9p states that:

> A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96-9p, 1996 WL 374185, at *8.

The Fifth Circuit Court of Appeals has not squarely addressed whether SSR 96-9p mandates a finding of disability for a claimant who is limited to unskilled sedentary work and is completely

unable to stoop. Its unpublished opinion in *Alexander v. Astrue*, 412 F. App'x 719 (5th Cir. 2011), is instructive, however. In *Alexander*, the ALJ found at step four that the plaintiff was able to perform sedentary work with certain limitations, including that she could "never stoop, kneel, crouch, or crawl," and that she was therefore unable to perform some of her past relevant work. *Id*. at 721. The court noted that a finding at step four that the plaintiff's impairments did not prevent her from performing some of her past relevant work, which the VE had classified as light and sedentary and semiskilled/skilled, should have resulted in the conclusion that she was not disabled and ended the sequential analysis. *Id.* The ALJ nevertheless proceeded to step five, and based on VE testimony, concluded that jobs existed in significant numbers in the national economy that the plaintiff could perform. *Id.* at 721-22. The court found that the ALJ made a procedural error by combining steps four and five, but that the error was harmless because his finding that the plaintiff still had the RFC to perform some of her past work was sufficient to support his step four conclusion that she was not disabled. *Id.* at 722. Alternatively, it was also sufficient to support his step five conclusion that she was able to perform jobs existing in significant numbers in the national economy and was therefore not disabled. *Id.*

Significantly, the Fifth Circuit went on to expressly reject the plaintiff's reliance on SSR 96-9p, stating:

> However, SSR 96–9p says only that a finding of disability "would *usually* apply"; it does not say that whenever a claimant has a complete inability to stoop, such a finding is automatically required at the fourth step. In this case, the ALJ found that [the plaintiff] was capable of performing some of her past relevant [light and sedentary and semiskilled/skilled] work notwithstanding her inability to stoop.

*Id.* at 723 (emphasis original). Accordingly, it found that the ALJ's decision was not contrary to SSR 96–9p, and that it was supported by substantial evidence in the record. *Id.*

14

The finding in *Alexander* that the phrase "would usually apply" in SSR 96-9p does not mandate an automatic finding of disability for a claimant with a complete inability to stoop is consistent with the findings of other circuit courts.  In *Lauer v. Apfel*, 169 F.3d 489 (7th Cir. 1999), the Seventh Circuit rejected a similar argument:

> On its face, this language does not compel a finding of disability in any of the situations it describes. Rather, it instructs adjudicators to consult with vocational resources when confronted with a claimant who is "limited to less than occasional stooping." [The plaintiff] argues that the recommendation to consult with a vocational expert applies only to cases when there is a partial ability to stoop, but this interpretation is inconsistent with the language of the ruling. The language "less than occasional" is an upper limit. It includes both an ability to stoop rarely and no ability to stoop at all.

*Id.* at 492.  Similarly, in *Duncan v. Colvin*, 593 F. App'x 668 (9th Cir. 2015), the Ninth Circuit stated:

> SSR 96–9p recommends that "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." SSR 96–9p at *8. Because the ALJ found that [the plaintiff] was limited to "no stooping," which is even less than "occasional stooping," the ALJ properly relied on the vocational expert's testimony to conclude that [the plaintiff] can could perform jobs existing in significant numbers in the national economy.
>
> We also reject [the plaintiff's] contention that her inability to perform any stooping established that her occupational base was eroded to the point that she was disabled. Although SSR 96–9p states that a finding of disability in such a situation would usually apply, SSR 96–9p at *8, SSR 96–9p also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.' ... [C]onsideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience," *id.* at *1.

*Id.* at 669-70; *see also Mullens v. Barnhart*, 165 F. App'x 611, 613-15 (10th Cir. 2006) (affirming finding that:  neither circuit case law nor SSR 96-9p required a finding of disabled where a claimant was unable to stoop, the proper course of action was to consult a VE and consider the claimant's individual limitations, this was the procedure followed by the ALJ, and the Commissioner's decision

was supported by the substantial evidence of the VE's testimony regarding the availability of sedentary jobs that required no stooping).

Likewise, it appears that a majority of district courts considering the issue, including one in Texas, have also found that SSR 96-9p does not mandate a finding of disability when the claimant has a complete inability to stoop. *See Bagwell v. Barnhart*, 338 F. Supp. 2d 723, 735 (S.D. Tex. 2004) ("SSR 96–9p does not compel a finding of disability. Instead, the ruling provides that an ALJ should consult a VE to determine a claimant's RFC when the claimant is limited by an inability to stoop."); *see also Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1048 (N.D. Ind. 2010) ("The Commissioner correctly notes that a limitation to never stooping does not direct a finding of disability."); *Jones v. Colvin*, No. CV 15-1126, 2016 WL 8716260, at *5 (E.D. Pa. Sept. 30, 2016) (SSR 96-9p does not command a finding of disabled); *Young v. Colvin*, No. 3:14-CV-888-J-JRK, 2015 WL 4620573, at *6 (M.D. Fla. July 31, 2015) (SSR 96-9p neither implies that an inability to stoop would completely erode the unskilled sedentary occupational base nor mandates a finding of disability); *Gehring v. Colvin*, No. 2:14CV56 JMB, 2015 WL 4620025, at *5 (E.D.Mo. July 31,2015) ("An inability to stoop does not automatically result in a finding of disability, but instead requires an ALJ to consult vocational resources to determine the effect such a limitation has on the occupational base."); *Banks v. Colvin*, No. 13-189-JJB-RLB, 2014 WL 4660847, at *11 (M.D. La. Sept. 17, 2014) (SSR 96-9p did not require the ALJ to find the claimant disabled where, although he was unable to stoop, he was capable of performing semi-skilled sedentary work); *Havens v. Comm'r of Soc. Sec.*, No. 2:12-CV-0637, 2013 WL 2099431, at *5 (S.D. Ohio May 14, 2013)("SSR 96–9p does not demand an automatic finding of disabled when a claimant, who is limited to sedentary work, has a complete inability to stoop."), *report and recommendation adopted*, No.

2:12-CV-0637, 2013 WL 2635746 (S.D. Ohio June 12, 2013); *Hernandez v. Astrue*, No. 1:10-cv-00198 SKO, 2011 WL 2493759, at \*6 (E.D.Cal. June 22, 2011) ("While a complete inability to stoop does erode the unskilled work base significantly, SSR 96–9p leaves open the possibility that an individual with such a limitation may still be determined able to perform certain work as testified to by a vocational expert."); *Luevano v. Barnhart*, No. CIV 05-0803 WPL, 2006 WL 8444090, at \*8 (D.N.M. July 12, 2006) (finding that the ALJ followed the procedure that the rule recommends by consulting a VE to determine whether there were occupations that the claimant could perform despite an inability to stoop, and that based on the VE's testimony, a finding that she was disabled was not required); *Smith v. Apfel*, No. 97 C 3173, 1999 WL 410018, at \*3 (N.D. Ill. May 27, 1999) (finding that there was no basis to assert that SSR 96–9p requires a finding of disability in cases where a claimant is unable to stoop, and that the ALJ fully complied with it by relying on VE testimony).  Notably, Plaintiff has not cited any case which specifically supports his argument that SSR 96-9p is a binding policy statement directing a finding of disabled where an ALJ finds a claimant limited to the unskilled sedentary occupational base has a complete inability to stoop.

Based on *Alexander* and the weight of authority, the Court finds that 96-9p does not mandate a finding of disabled for a claimant who is limited to unskilled sedentary work and has a complete inability to stoop, and that an ALJ should consult a VE to determine whether there are jobs existing in significant numbers in the national economy that the claimant can perform.  Here, to determine the extent to which Plaintiff's limitations (including the inability to stoop) eroded the unskilled sedentary occupational base, the ALJ properly posed hypotheticals to the VE consistent with those limitations.  The VE testified that the individual could perform three sedentary jobs: call-out operator, DOT 237.367-014; order clerk DOT 209.567-014; and final assembler DOT 713.687-018.

(*Id.* at 89-90.)   The ALJ found that the VE's testimony was consistent with the information contained in the DOT. (*Id.* at 55.)

Because the ALJ was not required to find that Plaintiff was disabled based on his inability to stoop, the ALJ did not err by relying on the VE's testimony that there were sedentary jobs existing in significant numbers in the national economy that Plaintiff could perform despite his inability to stoop.  Based on that testimony, substantial evidence exists to support the ALJ's finding that Plaintiff was not disabled.

## IV. RECOMMENDATION

The Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on this 6th day of March, 2020.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE